# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| CRAIG HAYWARD and DONNA HAYWARD, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No.  15-cv-00866 |
| TAYLOR TRUCK LINE, INC., | ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Before the Court is Defendant's Motion to Dismiss.  (R.10.)  For the following reasons, the Court grants, without prejudice, Defendant's Motion to Dismiss for improper venue and orders this case to be transferred to the Western District of Wisconsin.

## BACKGROUND

Plaintiffs Craig Hayward and Donna Hayward (collectively, the "Haywards" or "Plaintiffs") filed an Amended Complaint against Defendants Ahmed Mohamed ("Mohamed") and Taylor Truck Line, Inc. ("Taylor") (collectively, "Defendants") requesting damages for negligence and loss of consortium resulting from a vehicle collision.  (R.4, Pls.' Am. Compl., at 2-8.)[1]  Taylor moves to dismiss the Haywards' Amended Complaint under Rule 12(b)(3) for improper venue.  (*See* Fed. R. Civ. P. 12(b)(3); R.10, Def.'s Mot. to Dismiss.)

---

[1] On April 13, 2015, the Court granted Plaintiff Haywards' motion to voluntarily dismiss, Defendant Ahmed Mohamed, without prejudice.  (*See* R.13.)

## I.    Facts Alleged

The Haywards are citizens of Illinois.  (R.4, ¶ 1.)  Taylor is a corporation organized and existing under the laws of Minnesota, where its corporate headquarters and principal place of business are also located.  (R.20-2, Def.'s Answers to Pls' Interrogs., Interrog. No. 2, at 5.)  The Haywards allege that on October 2, 2014, Craig Hayward was driving a 2010 GMC Acadia westbound on Interstate 90 in the area of Mauston, Wisconsin.  (R.4, Count I, ¶ 8.)   At that time, Mohamed—a Taylor employee and citizen of Minnesota—was driving a semi-trailer truck also headed westbound on Interstate 90 in the same area.  (*Id.*, Count I, ¶¶ 5, 6.)  At around mile marker 68, the Haywards allege that Mohamed's truck struck their vehicle, causing it to spin off the road and injuring Mr. Hayward.  (*Id.,* Count I, ¶¶ 9, 10.)  As a result of the vehicle collision, Craig Hayward brought this suit claiming negligence against Mohamed and Taylor (Counts I and II, respectively), and Donna Hayward claimed loss of consortium against Mohamed and Taylor (Counts III and IV, respectively).  (R.4.)

## II.    Defendant's Contacts with Illinois

In determining Taylor's contacts, the Court accepts as true the Haywards' uncontested assertions relating to those contacts and draws all inferences in the Haywards' favor where Taylor contests relevant facts.  *See Northern Grain Mktg, LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014).  Taylor is a national transportation company that travels through the lower forty-eight states, in addition to some Canadian provinces.  (R.20-2, Interrog. No. 2, at 5.) Taylor conducts its trucking operations for the entire business out of Northfield, Minnesota.  (*Id.*) Although it is a Minnesota-based trucking operation, the Haywards allege Taylor has the following Illinois contacts:

(1) Taylor's deliveries in Illinois: 4,264 in 2012 (1,468 deliveries in Chicago); 4,276 in 2013 (1,388 deliveries in Chicago); 4,785 in 2014 (897 deliveries in Chicago); and 260 deliveries in January of 2015 (73% of deliveries in Chicago);

(2) Taylor's revenue generated by deliveries to Illinois: approximately $2.3 million in 2012; $2.2 million in 2013; $3.1 million in 2014; and $675,497.50 in January of 2015;

(3) Taylor's travel on Illinois roads: approximately 4.2 million miles in 2012 (11.31% of nationwide miles traveled); 4.2 million miles in 2013 (11.8% of nationwide miles traveled); 3.8 million miles in 2014 (12.26% of nationwide miles traveled); and 328,854 miles in January of 2015;

(4) Taylor's customers: 2,020 customers in 2012; 2,054 customers in 2013; 1,834 customers in 2014—12 of which have locations in Illinois and 3 in Chicago for each of the three years;

(5) Taylor's employees that reside in Illinois: 21 in 2012; 16 in 2013 and 2014; and 12 in January 2015;

(6) Taylor's solicitation of drivers from Illinois through its website; and

(7) Taylor's permits with the Illinois Department of Transportation: 100 oversized or overweight permits, 50 of which included commerce in Illinois.

(*See* R.20, Pls.' Resp., at 5-7; R.20-2, Interrog. Nos. 9, 10, 12, 15, and 18, at 8-12; R.31-2, Def.'s Answers to Pls' Suppl. Interrogs., Interrog. Nos. 1, 3-7, 9.)  Taylor does not, however, have any offices in Illinois, and does not own property in Illinois.  (R.20-2, Interrog. Nos. 2, 21, at 4, 14.)  Furthermore, Taylor has not run any radio, television, or print advertising in Illinois and does not have any registered agents in Illinois.  (*Id.*, Interrog. No. 2 (identifying corporate members in Florida and Minnesota), No. 20.)

## LEGAL STANDARD

### I.   Rule 12(b)(3) – Improper Venue

Federal Rule of Civil Procedure 12(b)(3) provides that a party may move to dismiss a case that is not filed in the proper venue.  *See* Fed. R. Civ. P. 12(b)(3).  Courts must take all allegations in the complaint as true, unless contradicted by the defendant's affidavits, and the

3

court may consider facts outside of the pleadings. *See Faulkenberg v. CB Tax Franchise Sys., LP,* 637 F.3d 801, 806 (7th Cir. 2011). Courts must resolve any conflicts in the affidavits regarding relevant facts in the plaintiff's favor. *See Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003); *see also Faulkenberg,* 637 F.3d at 806 (noting that the same standards apply to improper venue as do a Rule 12(b)(2) dismissal). The Seventh Circuit has cautioned that "once the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue Research Found.*, 637 F.3d at 783. When a defendant challenges venue, the plaintiff bears the burden of establishing proper venue. *Nat'l Tech. Inc. v. Repcentric Solutions,* No. 13 C 1819, 2013 WL 3755052, at *5 (N.D. Ill. June 16, 2013) (citing *Int'l Travelers Cheque Co. v. BankAmerica Corp.,* 660 F.2d 215, 222 (7th Cir. 1981)). If venue is improper, the court may either dismiss the suit or transfer it to a district in which the plaintiff could have filed it initially. *See* 28 U.S.C. § 1406(a). Venue can be proper in more than one district. *See Armstrong v. LaSalle Bank Nat'l Ass'n,* 552 F.3d 613, 617 (7th Cir. 2009).

## II.   Rule 12(b)(2) –Personal Jurisdiction

A motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) tests whether a federal court has personal jurisdiction over a defendant. *See* Fed. R. Civ. P. 12(b)(2); *Central States v. Phencorp. Reins. Co.*, 440 F.3d 870, 875 (7th Cir. 2006). In ruling on a Rule 12(b)(2) motion, courts may consider matters outside of the pleadings. *See Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). When a court determines a Rule 12(b)(2) motion based on the submission of written materials without holding an evidentiary hearing, as is the case here, the plaintiff must make a prima facie case of personal

jurisdiction.  *See uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 423-34 (7th Cir. 2010);

*GCIU-Emp'r Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009).  As such, the

plaintiff bears the burden of establishing that personal jurisdiction exists.  *See uBID*, 623 F.3d at

423-34; *GCIU-Emp'r Ret. Fund*, 565 F.3d at 1023.  To determine whether the plaintiff has met

its burden, the court may consider affidavits from both parties.  *Felland v. Clifton,* 682 F.3d 665,

672 (7th Cir. 2012).  When the defendant challenges by declaration a fact alleged in the

plaintiff's complaint, the plaintiff has an obligation to go beyond the pleadings and submit

affirmative evidence supporting the exercise of jurisdiction.  *Purdue Research Found.,* 338 F.3d

at 783.  Courts must also resolve all factual disputes in the plaintiff's favor.  *See GCIU-Emp'r

Ret. Fund*, 565 F.3d at 1020, n.1.

## ANALYSIS

Federal venue rules determine the judicial district in which a suit should be heard from

among those districts that have the power to hear the suit.  *KM Enters., Inc. v. Global Traffic

Techs., Inc.*, 725 F.3d 718, 724 (7th Cir. 2013) (citing *Leroy v. Great W. United Corp.*, 443 U.S.

173, 180, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979)).  As stated in section 1391(b):

A civil action may be brought in—

(1) a judicial district in which any defendant resides, if all defendants are
residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving
rise to the claim occurred, or a substantial part of property that is the subject of
the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided
in this section, any judicial district in which any defendant is subject to the
court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).  For the purposes of venue under § 1391(b)(1), "an entity . . . shall be

deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the

5

court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2).

Additionally, for states with multiple districts, such as Illinois, the statute provides that a:

> [C]orporation shall be deemed to reside in any district in that State within which
> its contacts would be sufficient to subject it to personal jurisdiction if that district
> were a separate State, and, if there is no such district, the corporation shall be
> deemed to reside in the district within which it has the most significant contacts.

28 U.S.C. § 1391(d)(2).

The Haywards argue that the Northern District of Illinois has personal jurisdiction over

Taylor, rendering venue proper under 28 U.S.C. § 1391(b).  (R.20, at 4.)  Thus, the Court turns to

whether venue is proper, predicated here upon whether the Northern District of Illinois has

personal jurisdiction over Taylor.

## I.    Personal Jurisdiction

A federal district court with subject matter jurisdiction based on diversity of citizenship

may exercise personal jurisdiction over a defendant only if personal jurisdiction is proper in the

state in which it sits.  *Kipp v. Ski Enter. Corp. of Wisconsin, Inc.*, 783 F.3d 695, 697 (7th Cir.

2015) (citing *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002)).  A court's exercise of

jurisdiction over a defendant must be authorized by the terms of the forum state's personal

jurisdiction statute and also must comport with the requirements of the Fourteenth Amendment's

Due Process Clause.  *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012) (citing *Tamburo v.

Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010)).

The Haywards argue that the Illinois long-arm statute provides jurisdiction here because

Taylor is "doing business" in Illinois.  (*See e.g.,* R.20, at 3-4 (citing 735 ILCS 5/2-209(b)(4)

(providing that a "court may exercise jurisdiction in any action arising within or without this

State against any person who … (4) [is] a natural person or corporation doing business within

this State")).)  The Illinois long-arm statute's "doing business" standard is "virtually identical to

the federal requirement for general personal jurisdiction that a party maintain continuous and systematic business contacts with the forum." *See Cent. States, Se. and Sw. Areas Pension Fund v. Phencorp Reinsurance Co., Inc.,* 530 F.Supp.2d 1008, 1016 (N.D. Ill. 2008).  In addition, the Illinois long-arm statute permits its courts to exercise personal jurisdiction "on any ... basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States."  735 Ill. Comp. Stat. § 5/2–209(c).  The Seventh Circuit has held that "there is no operative difference between those two constitutional limits."  *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010); *see also Kipp*, 783 F.3d at 697 ("The governing statute in Illinois permits its courts to exercise personal jurisdiction up to the limits of the Due Process Clause of the Fourteenth Amendment").  Consequently, "the statutory question merges with the constitutional one" and the Court will proceed to the question of whether the exercise of personal jurisdiction would violate federal due process.  *Northern Grain Mktg*, 743 F.3d at 491.  For a court to exercise personal jurisdiction over an out-of-state defendant, the key issue for constitutional purposes is whether the defendant has sufficient "minimum contacts" with the forum state such that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Mobile Anesthesiologists*, 623 F.3d at 443 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)); *see also Tamburo,* 601 F.3d at 701.

Jurisdiction may be general and specific.  *See Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014) (citing *Daimler AG v. Bauman*, ___U.S. ___, 134 S.Ct. 746, 753, 187 L.Ed.2d 624 (2014)).  The exercise of specific jurisdiction over a defendant requires a plaintiff to show that the alleged controversy between the parties "arises out of or relates to the defendant's contacts with the forum."  *Daimler*, 134 S.Ct. at 749

(quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)).  The Haywards do not allege that the Court has specific jurisdiction over Taylor and rely instead on general jurisdiction.  (*See* R.20.)  Accordingly, the Court turns to the issue of general jurisdiction.

General jurisdiction, unlike specific jurisdiction, "exists even with respect to conduct entirely unrelated to the forum state."  *Kipp*, 783 F.3d at 698.  The Supreme Court has emphasized the high bar required for establishing general jurisdiction.  *See Daimler*, 134 S.Ct. at 754; *Goodyear Dunlop Tires Operations, S.A. v. Brown*, ––– U.S. –––, 131 S.Ct. 2846, 2857, 180 L.Ed.2d 796 (2011); *see also Kipp*, 783 F.3d at 698 ("In recent years, the Supreme Court has clarified and, it is fair to say, raised the bar for [general jurisdiction]").  As instructed by the Seventh Circuit, general jurisdiction "should not lightly be found" and "exists only when the organization is 'essentially at home' in the forum state."  *Kipp*, 783 F.3d at 698 (citations omitted); *Daimler*, 134 S.Ct. at 760 (*quoting Goodyear*, 131 S.Ct. at 2851) (explaining that the inquiry "is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State").  "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State."  *Daimler*, 134 S.Ct. at 754 (*quoting Goodyear*, 131 S.Ct. at 2851).  If the requisite "continuous and systematic" affiliations exist, "the court may exercise personal jurisdiction over the defendant even in cases that do not arise out of and are not related to the defendant's forum contacts."  *Hyatt Int'l Corp.*, 302 F.3d at 713.

The Supreme Court has identified two "paradigm all-purpose forums for general jurisdiction": the state of the corporation's principal place of business or the state of its incorporation.  *Daimler*, 134 S.Ct. at 760.  The Supreme Court reasoned that limiting general jurisdiction to only those forums in which a corporation is "at home" allows entities "to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit" while also "afford[ing] plaintiffs recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims."  *Daimler*, 134 S.Ct. at 760, 763 (citations and internal quotation marks omitted).  Absent these circumstances, "[a]ny additional candidates would have to meet the stringent criteria laid out in *Goodyear* and *Daimler* . . . [which] require more than the 'substantial, continuous, and systematic course of business' that was once thought to suffice."  *Kipp*, 783 F.3d at 698 (quoting *Daimler*, 134 S.Ct. at 760-61).  As the Supreme Court has made clear, to "approve the exercise of general jurisdiction in every State in which a corporation engages in a substantial, continuous, and systematic course of business ... is unacceptably grasping."  *Daimler*, 134 S.Ct. at 757 (citations and internal quotation marks omitted).  With this background, we turn to the case at bar.

A.      **Taylor Is Not Subject to General Jurisdiction in Illinois**

At the outset, it is clear that neither of *Daimler's* paradigm examples apply here: Taylor is a Minnesota corporation and has its principal place of business in Minnesota.  (*See* R.4, at 3.)  As such, although the Haywards do not refer to *Goodyear* and *Daimler* and the high bar required for general jurisdiction,[2] they still must demonstrate that Taylor meets the stringent criteria laid out in *Goodyear* and *Daimler* that renders Taylor "essentially at home" in Illinois.  *See Daimler*,

---

[2] Plaintiffs did not cite or discuss *Daimler* or *Goodyear* in their response.  (*See generally* R.20.)  Additionally, all of the cases cited and relied on in Plaintiffs' response as a basis for finding general jurisdiction were decided prior to *Daimler* and *Goodyear*.  (*Id.*)

134 S.Ct. at 760.  To meet the jurisdictional standard, the Haywards rely on Taylor's business contacts through its deliveries in Illinois and Chicago and the resulting revenue generated, its travel on Illinois roads and related Illinois Department of Transportation permits, its employment of Illinois residents, solicitation of Illinois drivers, and activity in Illinois lawsuits.  (*See supra*, Background, II; R.20, at 5-7; *see also* R.20-2, Interrog. Nos. 9, 10, 12, 15, and 18, at 8-12; R.31-2, Interrog. Nos. 1, 3-7, 9.)  Taylor contends that because it is a Minnesota business that operates nationwide, it is not at home in Illinois—neither being incorporated in Illinois nor having a principal place of business in Illinois.  Taylor further argues that it does not have property in Illinois and does not have registered agents here.

The business contacts alleged by the Haywards may demonstrate a continuous and systematic course of business in Illinois, but do not render Taylor "essentially at home" in Illinois. *See Daimler*, 134 S.Ct. at 754 (*quoting Goodyear*, 131 S.Ct. at 2851).  The emphasis of *Daimler* and *Goodyear*, is on the appropriate limitation of forums in which corporations are found to be "at home".  *Id*.  This limitation, in large part, provides minimum assurance to entities regarding where their conduct "will and will not render them liable to suit."  *See Daimler*, 134 S.Ct. at 760, 763 (citations and internal quotation marks omitted).  When a defendant is not incorporated or does not have its principal place of business in the forum state, the "stringent criteria" must be met.  *See Kipp*, 738 F.3d at 698.  Namely, criteria that "require more than the 'substantial, continuous, and systematic course of business' that was once thought to suffice." *Id.* (*quoting Daimler*, 134 S.Ct. at 760-61).

Here, the Haywards focus on Taylor's contacts with Illinois that lack the relevant nationwide context necessary for the Court to conduct a proper analysis under *Daimler* and *Goodyear*.  Simply proving a substantial, continuous and systematic course of business in Illinois

is no longer enough.  *See Kipp*, 783 F.3d at 698 (quoting *Daimler*, 134 S.Ct. at 760-61).

Millions of miles travelled in Illinois for a Minnesota based trucking company do not represent

doing business in Illinois, as Haywards only requested information regarding Taylor's travel in

Illinois but did not limit that travel to doing business in Illinois.  (*See* R.20-2, Interrog. Nos.

9-10.)   Although at first glance, 12% of miles travelled in Illinois seems to be a substantial

business contact, the requested statistic for these miles is not limited to travel related to business

conducted in Illinois.  Instead, it includes travel by Taylor merely passing through Illinois en

route to deliver or pickup for customers in other states.  (*Id.*)  As the Supreme Court has

repeatedly emphasized, the inquiry "is not whether a foreign corporation's in-forum contacts can

be said to be in some sense 'continuous and systematic,' it is whether that corporation's

affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home

in the forum State."  *Daimler*, 134 S.Ct. at 760 (citations omitted).  Travel through Illinois en

route to other states to conduct business does not render Taylor "essentially at home" in Illinois.

       The additional contacts upon which the Haywards rely also lack the appropriate

nationwide context.  Indeed, the general jurisdiction analysis "does not focus solely on the

magnitude of the defendant's in-state contacts."  *Daimler*, 134 S.Ct. at 762 n.20 (citation

omitted).  Instead, the inquiry "calls for an appraisal of a corporation's activities in their entirety,

nationwide and worldwide."  *Id.*  As attested to in Taylor's responses to interrogatories, it is a

nationwide freight transportation company that travels through forty-eight states, including

Illinois.  (*See* R.20-2, Interrog. No. 2.)   The Haywards reliance, for example, on the absolute

number of deliveries, Illinois permits, and revenue generated through conduct in Illinois and in

the Chicago area while alone may seem substantial—with deliveries ranging in the thousands per

year for 2012, 2013 and 2014—does not afford the Court with a comparative nationwide context

to determine the substantial nature of such contacts for jurisdiction.  (*See* R.20-2, Interrog. Nos. 12, 13.)

In addition, the Haywards' reliance on Taylor's Illinois employees and customers does not establish substantial contacts under *Daimler*.  *See Daimler*, 134 S.Ct. at 762 n.20 (citation omitted).  Namely, the number of employees and independent contractors (owner-operators) is less than 5% of Taylor's total number of employees (21 of 462 employees in 2012; 16 of 423 employees in 2013; and 16 of 435 employees in 2014), with less than 1% in Chicago (2 of 435 employees in 2014).  (*See* R.20-2, Interrog. Nos. 14-15.)  In addition, the number of customers in Illinois is less than 1% of Taylor's total customers and in Chicago that number is even less.  (*See id.*, Interrog. Nos. 16-17.)  In addition, the customers upon which the Haywards rely are nationwide businesses themselves and characterization of these customers as "Chicago" or "Illinois customers" simply due to the fact that they have a location in Chicago or Illinois is misleading.  (*See* R.20-2, Interrog. No. 19 (listing, e.g., Wal-Mart, Nissan, and Georgia Pacific as customers).)

These contacts, collectively, fail to establish Taylor's continuous and systematic business in Illinois that would subject it to general jurisdiction under *Daimler*.  This is especially true given the fact that Taylor does not have any registered agents in Illinois.  (*Id.*, Interrog. No. 2.)  As a matter of fundamental fairness, Taylor could not reasonably expect that the employment of less than 5% Illinois residents and less than 1% Chicago residents would expose it to defending any and all claims from any party who filed suit in Illinois.  *See uBID, Inc. v. GoDaddy Grp. Inc.*, 623 F.3d 421, 425-26 (7th Cir. 2010) (affirming the district court's finding that the defendant was not subject to general jurisdiction in Illinois despite its "extensive and deliberate" web-based contacts because it would be "unfair to require [the defendant] to answer in Illinois

for any conceivable claim that any conceivable plaintiff might have against it"); *see also e.g.,*
*Shrum v. Big Lots Stores, Inc.*, No. 3:14-cv-03135-CSB, 2014 WL 6888446, at *7 (N.D. Ill. Dec.
8, 2014) (applying *Daimler* and *Goodyear* and finding the defendant was not subject to general
jurisdiction in Illinois where it had no offices or real property in Illinois and employed two
Illinois residents, even though the defendant had "fairly extensive and deliberate" Illinois
contacts).

As the Supreme Court has made clear, "a corporation's continuous activity of some sorts
within a state is not enough to support the demand that the corporation be amenable" to that
state's general jurisdiction. *Daimler*, 134 S.Ct. at 757 (citations and internal quotation marks
omitted). Further, as the Supreme Court has cautioned, "[n]othing in *International Shoe* and its
progeny suggests that 'a particular quantum of local activity' should give a State authority over a
'far larger quantum of ... activity' having no connection to any in-state activity." *Id.* Here, the
Haywards have not alleged or shown that Taylor is any more active in Illinois than in any other
state in which it delivers cargo. (*See* R.20; *see also generally* R.20-2 and R.31-2 (interrogatories
focusing on Illinois and silent as to contacts in other states which would be necessary for a
meaningful comparison).) Consequently, a 48-state nationwide freight transportation company,
such as Taylor, that "operates in many places can scarcely be deemed at home in all of them,"
because "[o]therwise, 'at home' would be synonymous with 'doing business' tests framed before
specific jurisdiction evolved in the United States." *Daimler*, 134 S.Ct. at 762, n.20 (citation
omitted).

Moreover, for this Court to hold otherwise would go against the Supreme Court's
underlying rationale in *Daimler*. In *Daimler*, the Supreme Court reasoned that limiting general
jurisdiction to only those forums in which a corporation is "at home" allows entities "to structure

13

their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit" while also "afford[ing] plaintiffs recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims." *Daimler*, 134 S.Ct. at 760, 763 (citations and internal quotation marks omitted).  If Taylor's contacts support general jurisdiction in Illinois, "the same global reach would presumably be available in every other State" in which Taylor's deliveries and picks up goods, generates revenue, and passes through en route to business elsewhere.  *Daimler*, 134 S.Ct. at 761.  On several occasions, the Supreme Court has rejected such a "sprawling view of general jurisdiction."  *See e.g., Goodyear*, 131 S.Ct. at 2857; *Daimler*, 134 S.Ct. at 761.

The facts alleged do not render Taylor "essentially at home" in Illinois.[3]  *See Kipp*, 783 F.3d at 698 (corporation's contacts with Illinois "come nowhere close to the *Goodyear/Daimler* standard", even though the defendant attended annual trade show in Chicago, used email addresses collected at the trade show to email Illinois residents for marketing purposes, targeted Illinois customers through Chicagoland Express package, attracted a large number of Illinois customers to it resort, and operated a website accessible by Illinois customers); *see also Holman v. AMU Trans, LLC*, No. 14 C 04407, 2015 WL 3918488 (N.D. Ill. 2015) (trucking company's contacts with Tennessee, including using its highways and paying a Motor Vehicle Use Tax, fall short of the *Goodyear/Daimler* standard); *Farber v. Tennant Truck Lines, Inc.*, No. 14–5028,

---

[3] The Haywards additional reliance on Taylor's website as soliciting employees and business in Illinois is misplaced.  Taylor's website, as presented by Plaintiffs, merely states it provides "services to the lower 48 states".  (*See* R.20, at 7, Ex. 4, Taylor Truck Line Website).  This general statement, however, is insufficient to constitute solicitation in Illinois as it is not specifically directed toward Illinois and is available on the general website, nor does it explicitly target or mention Illinois.  *See e.g., Tamburo*, 601 F.3d at 701 (holding that the "maintenance of a public Internet website" is not "sufficient, without more, to establish general jurisdiction."); *Shrum*, 2014 WL 6888446, at *8 (finding the defendant's website did not suffice as a contact for general jurisdiction where it did not target Illinois and was used to generally provide information about the defendant's services).

2015 WL 518254 (E.D. Pa. 2015) (trucking corporation's "regular and systematic conduct [with Pennsylvania] is insufficient to subject [it] to general jurisdiction in Pennsylvania under *Goodyear* and *Daimler*," despite the defendant company's Pennsylvania contacts of thousands of delivery and related annual revenue between $800,000 and $1,600,000 over a four year period, travelling between 382,000 and 636,000 miles over a five year period, purchasing between 69,000 and 104,000 gallons of gas annually over a five year period, employing several individuals that resided in Pennsylvania, and making numerous tax payments to the state).  Based on the contacts as alleged here and taken in the light more favorable to the Haywards do not establish forum activities—balanced against out-of-forum activities—that constitute sufficiently systematic and continuous contacts to render Taylor "at home" in Illinois.  Thus, the Court cannot exercise general jurisdiction over Taylor.

### B. Lack of Personal Jurisdiction and Improper Venue Warrants Transfer of Action to Western District of Wisconsin

Lack of personal jurisdiction alone is sufficient to dismiss a case.  *See Daimler*, 134 S.Ct. at 748.  As relevant to Defendant's Rule 12(b)(3) motion, however, because Taylor is not subject to personal jurisdiction in Illinois, venue for this case is improper in the Northern District of Illinois.  As an alternative to dismissal, Plaintiff requests a transfer of this case and the parties agree that venue properly lies in the Western District of Wisconsin as it is the location where the collision occurred.  (*See* R.20, at 11; R.24, ¶ 13.)  The Court may, "if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a); *see also Cote v. Wadel*, 796 F.2d 981, 985 (7th Cir. 1986) ("Under either section [(28 U.S.C. § 1404(a) or 28 U.S.C. § 1406(a))], the district court has broad discretion to grant or deny a motion to transfer the case").  Thus, the Court finds that the Northern District of

Illinois is an improper venue for this case and transfers it to the Western District of Wisconsin based on the parties' agreement and in the interest of justice.  *See* 28 U.S.C. § 1406.

## CONCLUSION

For the reasons stated above, the Court grants, without prejudice, Defendant's Motion to Dismiss for improper venue and orders this case to be transferred to the Western District of Wisconsin.


**DATED:   September 14, 2015**                    ENTERED

_____
AMY J. ST. EVE
United States District Court Judge